USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/20/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
UNITED STATES OF AMERICA,      :
     :
     -against-      :    18-CR-865 (VEC)
     :
JOSE SANTANA,      :    ORDER
     :
                       Defendant.      :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

WHEREAS on June 23, 2020, Mr. Santana filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c) (Dkt. 45);

WHEREAS on July 7, 2020, the Government opposed Defendant's motion for compassionate release and provided Mr. Santana's Bureau of Prisons ("BOP") medical records under seal and disciplinary records on the docket (Dkt. 50);

WHEREAS on July 10, 2020, Mr. Santana submitted a reply letter in further support of his motion for compassionate release (Dkt. 51); and

WHEREAS Mr. Santana has exhausted his administrative remedies as required by the statute, 18 U.S.C. § 3582(c)(1)(A) (*see* Dkt. 45 at 7);

IT IS HEREBY ORDERED that Mr. Santana's motion for compassionate release is DENIED. He fails to demonstrate "extraordinary and compelling reasons" to reduce his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Santana has not shown that his health conditions in combination with increased risks of contracting COVID-19 at Schuylkill warrant a reduction of his sentence. While Mr. Santana raises concerns about BOP's overall infection rate,[1] the data shows that Schuylkill has an effective plan to reduce the risk of COVID-19 infection, reporting

---

[1] The Court notes that this figure does not seem to accord with the statistics provided on BOP's website.

only one confirmed case among about 1,000 inmates since the outset of the pandemic.[2]  In arguing for his release despite the paucity of COVID-19 cases at Schuylkill, Mr. Santana relies primarily on case law from April and May 2020, during the early stages of the pandemic.  While much is still unknown about COVID-19, we know much more now about effective measures to control the spread of this virus than we did at the outset of this pandemic.  Prisoners and courts alike were justified in their early concern about the spread of COVID-19 in BOP facilities.  BOP has, however, shown itself capable of successfully limiting the spread of COVID-19, including at Schuylkill.[3]

Mr. Santana argues that he should be released because he is at increased risk from COVID-19 due to his obesity, hypertension, race, and history of addiction.  Mr. Santana is only marginally obese, and his hypertension is well-managed through his prescribed medication.  Recognizing the disproportionate impact COVID-19 has had on impoverished communities and communities of color, Mr. Santana's status as a Latinx man with a history of poverty likely does not render him, as an individual, inherently more susceptible to COVID-19.  Even in conjunction with Mr. Santana's history of drug use, these factors do not rise to the level of the extraordinary and compelling reasons necessary to justify his release.

The Clerk of Court is respectfully directed to close docket entry 45.

---

[2] While the Court does not doubt that, due to limited testing, there may be additional positive cases beyond the one confirmed case, one positive result out of 48 tests conducted is plainly a success. *United States v. Ortega*, No. 02-CR-348, 2020 WL 3402914, at *2 (S.D.N.Y. June 19, 2020).  Mr. Santana argues that one positive test out of 48 tests run "is not an exceptionally low rate." Def. Letter, July 10, 2020, at 3.  One positive test out of 48 reflects a 2% positive test rate.  That is worse than the current 7 day rolling average in New York (0.8%) but is substantially better than the 7 day rolling average in Florida (15.2%) and numerous other states.  *See* https://coronavirus.jhu.edu/testing/individual-states/usa.

[3] According to Mr. Santana, as of July 9, 2020, 94 federal inmates have died from COVID-19.  Def. Letter, July 10, 2020, at 2.  There are approximately 160,000 federal inmates, yielding a death rate of 0.058%.  That is only marginally higher than the death rate for the entire country (170,000 deaths (and rising) in a population of 328.2 million, or 0.052%).

**SO ORDERED.**

Date:  **August 20, 2020**
          New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**